IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Experiential Systems, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22-cv-4789 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| Michael Reddish, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Experiential Systems, Inc. ("Experiential"), entered into an Asset Purchase Agreement dated October 5, 2018 (the "Agreement"), with defendant Michael Reddish ("Reddish"), to purchase the assets of Reddish's former business, Adventure Rope Gear, LLC ("Adventure Rope"). *See* Compl. ¶ 17, ECF No. 1. In 2022, Experiential filed this diversity suit, 28 U.S.C. § 1332(a)(1), against Reddish alleging a claim for breach of a non-competition clause and related clauses of the Agreement. *See* Compl. ¶¶ 8, 21–24, 39–46, 52–60. The court has before it Reddish's motion to dismiss Experiential's complaint for improper venue, Fed. R. Civ. P. 12(b)(3), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6). For the following reasons, the court denies Reddish's motion to dismiss.

### I. Background

When deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a complaint for failure to state a claim, the court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Broth. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). The complaint states that the Asset Purchase Agreement is attached as Exhibit A, but the complaint has no exhibits. *See* ECF No. 1. Because a Rule 12(b)(6) motion tests only the complaint's sufficiency, the court's resolution of such a motion "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c) and *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); other citations omitted). Reddish attached a copy of the Agreement as Exhibit 1A to his motion to dismiss. Agreement, Mot. to Dismiss Ex. 1A, ECF No. 23. Experiential does not dispute the authenticity of Exhibit 1A, so the court considers it because it is central to the claims in the complaint and because Experiential intended to incorporate it by reference into the complaint.[1] *See* Compl. ¶ 17.

Experiential is a Michigan company with its principal place of business in Thornton, Illinois. Compl. ¶ 4. Reddish resides in Arizona. Compl. ¶ 5. Experiential has been in business for 35 years. Compl. ¶ 16. It "designs and installs low challenge courses, high ropes courses, aerial adventure parks, zip lines, climbing walls and climbing towers, commercial playgrounds, and shade structures." Compl. ¶ 13. Experiential also provides related services, such as inspecting courses, training challenge course instructors, and issuing certifications. *See* Compl. ¶¶ 14–15.

When Reddish sold his former company to Experiential in 2018, the parties understood that "Reddish would be retiring from the industry and would retain the ability to build and operate his own challenge courses and design and build courses outside of North America." Compl. ¶ 18; *but see* Agreement § 12.9. The Agreement contains provisions transferring from Adventure Play to Experiential six online stores and multiple additional websites. *See* Agreement §§ 1.5–1.6, 3.3–3.6; *id*. at 1–2 (complete list of websites); Compl. ¶¶ 19–20. The Agreement also includes the following non-competition and non-solicitation clauses:

> 1.1    "**Business**" means the sales, design, installation, inspection, staff training, and/or sales of related equipment to/of Canopy Zip Line Tours, zip Lines, Aerial

---

[1] Defendant attached to its motion to dismiss a copy of the complaint along with five exhibits labeled A through E, purportedly corresponding to the exhibit letters referenced in the complaint. These exhibits appear to be the documents referenced in the complaint, but, with the exception of the Agreement, the court has no way of determining whether defendant attached the exhibits plaintiff intended to reference in its complaint. The letter dated October 21, 2021, attached to defendants' motion to dismiss does not match the text quoted in the complaint. *Compare* Mot. to Dismiss Ex. 1E at 2, ECF No. 23, *with* Compl. ¶ 49.

Adventure Parks, Ropes Courses, Challenge Courses, Ninja Courses, Obstacle Courses and/or structures similar in design and function for individual or group use in indoor or outdoor environments in any industry including, but not limited to, recreation, rescue, and arborist industries.

* * * *

7.1     By this Agreement, Company [Experiential] purchases Seller's [Reddish and Adventure Rope] complete interests and property in the Business.  In other words, Company purchases Seller's presence in the Business.

7.2     By purchasing Seller's complete interests and property in the Business, Seller shall no longer participate in the Business of providing 3rd party vended services in design, construction, inspection, staff training, installation, and maintenance or equipment sales for a period of three (3) years from the date of this Agreement.

7.3     Based on the foregoing, and as an express condition of Company's purchase of the Seller Domains and Seller Websites, Seller agrees that it shall permanently not compete with Company in the Business in any jurisdiction.

>   7.3.1   Seller shall not acquire, purchase, rent, or otherwise obtain any domain names or websites similar to the Seller Domains or Seller Websites.
>
>   7.3.2   Seller shall not acquire, purchase, rent, or otherwise obtain any domain names or websites related in any manner to ropes courses, zip lines, canopy tours, aerial adventure parks, teambuilding, challenge courses, ninja courses or obstacle courses.
>
>   7.3.3   Seller shall not acquire, purchase, rent, or otherwise obtain any domain names or websites related in any manner to the Business.
>
>   7.3.4   Seller shall not perform any SEO services or Website Services or Computer Services in the Business.
>
>   7.3.5   The foregoing restrictions shall apply to any other media including, but not limited to, social media, blogs, accounts, electronic media, print media, or any other means by which Seller can market and/or be engaged in the Business.
>
>   7.3.6   In sum, the Seller shall not develop any presence online or offline in the Business.

7.4     Seller covenants and agrees that he will not for any reason, directly, or indirectly, engage in the Business anywhere.

7.5     <u>Non-Compete</u>. Seller shall not compete against the Company in the Business in any manner except that he may build courses for himself to manage and/or operate and development [sic] of web sites for the promotion of the courses Seller manages and/or operates.

>   7.5.1   Seller may continue to work with clients from Ghana, Africa and Grenada to help them to design, build, and operate ziplines and/or challenge courses.

3

>     7.5.2   Seller will be able to purchase equipment and hardware at a 5% above cost on all gear that Company sells. This gear will be used on sellers [sic] own ziplines/challenge courses and will not be used for re-sale or trade. All invoices will be paid at time of order.
>
> 7.6     Non-Circumvent. Seller will refrain from soliciting business, developing a professional relationship, and/or acquiring any other association from any person or entity that Company or its principals, agents, representatives may directly or indirectly introduce to Seller including, but not limited to, any Company representative/agent, liaison, vendor, supplier and investor. This shall specifically include the covenant not to circumvent, avoid, bypass or obviate Company, directly or indirectly, whether or not to actually or partially avoid payment or take business away from Company.
>
> 7.7     Non-Solicitation. Seller shall not, either on his/its own account or for any person, firm, partnership, corporation, or other entity, (i) solicit, interfere with, or endeavor to cause any employee, liaison, vendor or independent Seller of Company to leave or reduce in any way his/its employment, relationship or affiliation with Company; (ii) induce or attempt to induce any person to terminate his//its [sic] employment, relationship or affiliation with Company; (iii) solicit, interfere with, or endeavor to cause any customer, contact, broker, agent, representative, seller, buyer, liaison, investor, developer, vendor, or supplier to change or cease doing business in whole or in part with or through Company; or (iv) solicit or do business with any person, lender, source, firm, broker, buyer, partnership, seller, investor, potential investor, developer, vendor, supplier corporation or other entity for products or services similar to those performed (actually or proposed) without the prior express written consent of Company; and/or (v) interfere, solicit, convince or endeavor to cause any customer to change or cease doing business in whole or part with Company or any party introduced by or to Company by Seller.
>
> * * * *
>
> 7.9     The foregoing covenants, provisions, and restrictions shall apply whether Seller acts alone or as a partner in a joint venture or other partnership, or as an officer, director, member, employee, consultant, agent, independent Seller or shareholder of, or lender to, any company or business.

Agreement §§ 1.1, 7.1–7.7, 7.9.

Through counsel, Experiential sent Reddish a letter dated June 13, 2019, advising him that he had breached the Agreement. *See* Compl. ¶¶ 25–26. The letter stated that Reddish had failed to make payments to third parties for which he was responsible, that he had continued to use the name Adventure Rope Gear in violation of the Agreement, and that he had violated the Agreement's non-competition clause. *See* Compl. ¶ 26. According to the complaint, "Reddish addressed some but not all of the issues raised in the June 13, 2019, letter." Compl. ¶ 27. The complaint does not indicate which alleged violations Reddish addressed. *See* Compl. ¶ 27.

4

The next month, Reddish formed a new company, Zipline Systems, LLC ("Zipline Systems"), in Arizona. Compl. ¶ 28 (company formed July 11, 2019). Experiential alleges that Reddish breached the Agreement by forming and operating Zipline Systems between 2019–21. *See* Compl. ¶¶ 29–33. Among other things, Reddish, using the name Zipline Systems, submitted bids to potential Experiential customers. *See* Compl. ¶ 32. Experiential sent Reddish "several cease and desist letters," which eventually resulted in the dissolution of Zipline Systems. Compl. ¶ 33.

Reddish now operates a company called Adventure Play Consulting ("Adventure Play"). Compl. ¶ 34. Adventure Play's website lists its services as:

> (1) plan analysis—"We help you design and build Adventure Structures and Play Spaces;" (2) "We will give you a comprehensive adventure safety review;" (3) "Let us help you build something . . . We Specialize in . . . Amusement Parks, Zip Lines . . . Harness and Safety Gear, Ropes Courses . . ." In addition to these, Adventure Play offers consulting services related to budgeting, installation, play space relocation, and safety inspections.

Compl. ¶ 36 (alterations in original) (quoting https://adventureplayconsulting.com/adventure-play-consulting (last viewed January 6, 2022)).

Based on this description of services and other portions of Adventure Play's website, Experiential alleges that "the business model of Adventure Play Consulting is in direct violation of the non-compete terms Reddish agreed to in the Agreement." Compl. ¶ 39; *see* Compl. ¶¶ 37–38, 40–46 (identifying specific provisions of the Agreement allegedly violated).

By letter dated October 21, 2021, Experiential advised Reddish that it believes that he is breaching the Agreement by operating Adventure Play and provided him with an opportunity to cure his alleged breach. Compl. ¶¶ 48–49; *see also* Agreement § 11.1 (procedure for sending notice of alleged breach of contract). Experiential's letter to Reddish stated in part:

> [I]t appears you may be under the impression Section 7.2 prohibited you from engaging in the "Business" for a three-year period (or until October, [sic] 5, 2021). It did not. Section 7.2 prohibited you from seeking employment with third-party companies also involved in designing, constructing, inspecting, training staff, installing, maintaining equipment, or selling equipment related to the "Business." In other words, as of October 5, 2021, you were free to seek employment with

5

> companies engaged in the above activities. However, you were not free to form such a company or create and operate a website for such a company.

Compl. ¶ 49 (alteration in original) (quoting letter not attached to the complaint); *but see supra* note 1.

Experiential unsuccessfully attempted to negotiate a resolution with Reddish through counsel. Compl. ¶ 50. Reddish "continues to operate Adventure Play Consulting without any substantive modification." Compl. ¶ 50.

Experiential pleads a single count in its complaint for breach of the Asset Purchase Agreement. *See* Compl. ¶¶ 52–60. The complaint requests temporary and permanent injunctive relief as well as attorneys' fees and costs in accordance with the Agreement. *See* Compl. ¶¶ 61–65; Agreement § 12.17.2.

## II. The Forum-Selection Clause

Reddish first moves to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. Mot. to Dismiss 2–3, ECF No. 23. He argues that § 12.10 of the Agreement contains a mandatory forum-selection clause making the state court in Cook County (the Circuit Court of Cook County) the exclusive venue for this dispute. *Id*. Experiential responds that Rule 12(b)(3) is the improper procedural vehicle for Reddish's motion and that the forum-selection clause permits suit in state or federal court located in Cook County. Resp. to Mot. to Dismiss ("Resp.") 3–8, ECF No. 25.

### A. Procedural Standard

Rule 12(b)(3) permits a defendant to raise the defense of "improper venue" before filing an answer. Fed. R. Civ. P. 12(b)(3). On a Rule 12(b)(3) motion, "reasonable inferences from the facts should be construed in the plaintiff['s] favor." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). In *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, the Supreme Court held, "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under 28 U.S.C. § 1404(a)." 571 U.S. 49, 59 (2013).

Citing *Atlantic Marine*, Experiential contends that the exclusive vehicle for enforcing the Agreement's forum-selection clause is the general federal venue transfer statute, § 1404(a). Resp. 3–5. If this argument were correct, Reddish would have no effective means of enforcing a forum-selection clause allegedly pointing to a state forum because § 1404(a) does not permit transfer to state court. It authorizes transfers from one federal court to another: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Although Rule 12(b)(3) is not the proper procedural vehicle for enforcing a forum-selection clause in favor of a state forum, Reddish has a remedy. Consistent with *Atlantic Marine*, the Seventh Circuit has held that the forum non conveniens doctrine, not Rule 12(b)(3), is "the appropriate way to enforce a forum-selection clause pointing to a state." *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022) (quoting *Atl. Marine*, 571 U.S. at 60). The following general principles guide the analysis where a party moves to enforce a forum-selection clause allegedly laying exclusive venue in state court:

> When applying forum non conveniens, district courts must engage in a two-step inquiry, determining (1) whether there is an available adequate alternative forum and (2) whether adjudication in that forum best serves the convenience of the parties and the interests of justice. *Stroitelstvo Bulgaria Ltd. v. Bulgarian–Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). Usually, this second step includes considering a plaintiff's preference in forum as well as both private and public interest factors. But [where an] Agreement's forum selection clause is mandatory, . . . [t]he [plaintiff's] preferred forum gets no weight, and the district court only need[s] to evaluate the public interest factors. See *Atl. Marine*, 571 U.S. at 63–64. The public interest factors still include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008).

*Id*.

The Seventh Circuit's decision in *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Services, Inc.*, 7 F.4th 555, 560–61 (7th Cir. 2021), provides guidance on whether the court

7

should reach forum non conveniens. There, as here, the defendant used an "improper" Rule 12(b)(3) motion to enforce a forum-selection and arbitration clause in favor of a state forum. *Id*. The Seventh Circuit declined to reverse on this procedural ground because, given the limited issues raised by the parties, whether the "motion is analyzed as one under Rule 12(b)(3) or one under forum non conveniens does not impact the substantive analysis." *Id*. at 561. Similarly here, the parties focus on a single issue—whether the Agreement's forum-selection clause is exclusive to Cook County Circuit Court or whether it also permits suit to be filed in this federal court because it regularly sits in Cook County. This court has been given no reason to believe that the substantive analysis would be altered if the parties briefed forum non conveniens rather than the Rule 12(b)(3) standard. *See* Mot. to Dismiss 2–3; Resp. 5–8; Reply 2–5, ECF No. 26. The court therefore proceeds to the forum-selection clause issue briefed by the parties. *See Dr. Robert L. Meinders*, 7 F.4th at 561; *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018).

### B. Analysis

Section 12.10 of the Agreement contains the following choice of law and forum-selection clause:

> 12.10 <u>Governing Law</u>. This Agreement is delivered and is intended to be performed in the State of Illinois and will be construed and enforced in accordance with the laws of the State of Illinois. Venue and jurisdiction shall be exclusively in Cook County, Illinois. EACH PARTY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ITS RIGHT TO A JURY TRIAL IN ANY MATTER RELATING TO THIS AGREEMENT OR THE BUSINESS RELATIONSHIP BETWEEN THE PARTIES.

Agreement § 12.10.

Under Illinois law, "A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Jackson*, 764 F.3d at 777 (alteration omitted) (quoting *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 389 (Ill. App. Ct. 1st Dist. 2007)). "Jurisdiction, venue, and forum clauses can be mandatory (exclusive) or permissive (nonexclusive)." *IAC/Interactive Corp.*, 44 F.4th at 643 (brackets omitted) (quoting *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d

8

674, 679 n.2 (7th Cir. 2007)). "[W]here venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Id.* (quoting *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). The second sentence of § 12.10 is a mandatory forum-selection clause because it uses the mandatory word "shall" and specifies both venue and jurisdiction. *See, e.g.*, *id.* (holding that clause using "shall" was mandatory). Experiential does not argue that the clause in § 12.10 is unenforceable. There is also no dispute that Experiential's breach of contract claim falls within the scope of § 12.10. *See* Mot. to Dismiss 2–3; Resp. 3–8.

      The dispute here centers on how to construe the phrase "shall be exclusively in Cook County, Illinois." In Illinois, as in other states, the "primary goal of contract interpretation is to give effect to the parties' intent in entering the contract." *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 19 (quoting *Kasper v. McGill Mgmt. Inc.*, 2019 IL App (1st) 181204, ¶ 39). Illinois courts construe contracts "objectively . . . in accordance with the ordinary expectations of reasonable people." *Id.* (quoting *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1185 (Ill. App. Ct. 1st Dist. 2009)). Illinois courts begin interpreting a contract by looking to the "plain and ordinary meaning of the contract language." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022) (quoting *E. Coast Ent. of Durham, LLC v. Hous. Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022)). Under this standard, undefined contractual terms "will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Id.* (quoting *Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (Ill. 2021)); *see also Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 689–90 (7th Cir. 2017).

      The parties cite no Seventh Circuit or Illinois cases. Many district court decisions in the Seventh Circuit analyze similar forum-selection and venue clauses pointing to a county without referencing state or federal court. *See, e.g.*, *Genesis Stores, Inc. v. U.S. Ventures, Inc.*, 2019 WL 4601738, at *1–2 (N.D. Ill. Sept. 23, 2019); *Exhibit Sys., Inc. v. Pico Art Int'l Pte., Ltd.*,

2015 WL 3930265, at *3–4 (N.D. Ill. June 25, 2015); *PNC Bank, NA v. OHCMC-Oswego, LLC*, 2011 WL 13257112, at *1–2 (N.D. Ill. June 20, 2011); *see also Advance Steel Erection, Inc. v. Design Data Corp.*, 2012 IL App (1st) 111977-U, ¶¶ 4, 41. As stated in the primary case cited by Experiential, "Courts in this circuit have wrestled frequently with clauses similar to the clause at issue here and have arrived at inconsistent results." *Bodine Elec. Co. v. Viking Access Sys., LLC*, 2009 WL 3055362, at *1 (N.D. Ill. Sept. 22, 2009) (citations omitted).

One line of cases employs reasoning similar to the Tenth Circuit's decision in *Excell v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). *See, e.g.*, *Progressive Pub'ns, Inc. v. Capitol Color Mail, Inc.*, 500 F. Supp. 2d 1004, 1005–06 (N.D. Ill. 2007). The forum-selection clause in *Excell* read in pertinent part: "if any dispute arises regarding the provisions of the contract, jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado." 106 F.3d at 321 (quotation and brackets omitted). Without mentioning the possibility that this clause is ambiguous, the Tenth Circuit held that it limited venue exclusively to the state court in El Paso County, reasoning that "[f]or federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.'" *Id.* (citing 28 U.S.C. § 1391).

Other district courts have concluded that forum-selection clauses "that identify only a place and not a particular court are ambiguous." *Bodine Elec.*, 2009 WL 3055362, at *2 (citing *Rochester Cmty. Sch., Corp.*, 2007 WL 2473464, at *6, and *Truserv Corp.*, 2001 WL 1298718, at *1–2). These courts invoke the principle that the ambiguity in such clauses should be construed against the drafter, meaning that whether the particular clause permits suit in state and federal court will depend on who drafted the contract.[2] *See id.* at *2–3.

Although no Seventh Circuit case appears to be directly on point, the analysis in *Seafarers Pension Plan ex rel. Boeing Co. v. Bradway*, 23 F.4th 714, 720 (7th Cir. 2022), is instructive. In *Seafarers Pension Plan*, the Seventh Circuit compared a forum-selection clause in

---

2   The Agreement here includes the following provision: "This Agreement shall be construed as having been jointly authored and negotiated by the Parties." Agreement § 12.3.

10

a corporation's bylaws to a Delaware statute providing in part that "bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." *Id*. (quoting DEL. CODE ANN. tit. 8, § 115). The Seventh Circuit drew a distinction between courts "in" a state and courts "of" a state: "The United States District Court and Bankruptcy Court for the District of Delaware are certainly, in the statute's words, 'courts *in* this State' of Delaware." *Id*. at 721 (emphasis in original). Under the plain language interpretation in *Seafarers Pension Plan*, a forum-selection clause pointing to courts in a state or county permits suit in state and federal courts geographically located in the named state or county. *See id*.

The Seventh Circuit's plain language construction in *Seafarers Pension Plan* finds support in the decisions of "every circuit court to have addressed this issue" since *Excell. See Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 675 (4th Cir. 2018) (citing and discussing cases). Judge McKeown's opinion for the Ninth Circuit in *Simonoff v. Expedia, Inc.*, encapsulates the reasoning of federal appellate courts since *Excell*:

> The phrase "the courts of" a state refers to courts that derive their power from the state—i.e., only state courts—and [a] forum selection clause, which vested exclusive jurisdiction in the courts "of" Virginia, limited jurisdiction to the Virginia state courts. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081–82 (9th Cir. 2009) (per curiam).
>
> By way of contrast, however, . . . a forum selection clause referring to "courts in" a state imposes a geographic limitation, not one of sovereignty. *Id*. at 1082 & n.8. The word "in" means to "'express relation of presence, existence, situation, inclusion; inclosed or surround by limits, as in a room.'" *Id*. at 1082 n.8 (quoting Black's Law Dictionary 758 (6th ed. 1990)). Hence the phrase "courts in" a state includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state. *See id*. at 1082 & n.8. In short, the rule we adopted in *Doe 1* is that a forum selection clause that specifies "courts of" a state limits jurisdiction to state courts, but specification of "courts in" a state includes both state and federal courts.
>
> The forum selection clause in the Expedia contract vests "exclusive jurisdiction and venue in the courts *in* King County" (emphasis added). Because the clause uses the preposition "in," the contract contemplates federal as well as state courts as proper courts for adjudication.

*Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205–06 (9th Cir. 2011) (footnote and alterations omitted).

11

The Ninth Circuit declined to follow *Excell*, in addition, because federal districts typically extend over several counties and are so defined. *Id*. at 1206; *accord All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400–01 (5th Cir. 2008). The First, Second, Fourth, Fifth, Sixth, and Eleventh Circuits have employed similar reasoning when construing a forum-selection clause using the preposition "in" to designate a county, and any courts within it, as the exclusive venue for disputes. *See Simonoff*, 643 F.3d at 1206 n.1 (collecting cases); *Bartels*, 880 F.3d at 674–75 (4th Cir. 2018); *see also Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895, 898–99 (8th Cir. 2021); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995); *but see Bartels*, 880 F.3d at 683–85 (Floyd, J., concurring in part). This court agrees and adds that the *Excell* approach presumes the contracting parties' familiarity with the differences between state and federal venue statutes as well as the intricacies of how federal judicial districts are defined. *See, e.g.*, 28 U.S.C. § 93(a). Illinois courts "will not adopt an interpretation [of a contract] that 'rests on gossamer distinctions that the average person . . . cannot be expected to understand.'" *Sproull*, *supra*, 2021 IL 126446, ¶18 (quoting *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010)).

For all of the foregoing reasons, this court joins the clear weight of federal appellate authority since *Excell* and holds "that a forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county." *Simonoff,* 643 F.3d at 1207. The forum-selection clause in the case at bar provides, "Venue and jurisdiction shall be *exclusively* in Cook County, Illinois." Agreement § 12.10 (emphasis added). This clause unambiguously vests jurisdiction exclusively in the state and federal courts located in Cook County, Illinois. Because this federal court regularly sits in Cook County, the clause allows Experiential to file suit in this court.[3]

---

3 As noted in *Bodine Electric*, the time has come for practitioners and maintainers of form contracts to retire language similar to that used in the clause at issue in this case. *See Bodine Elec.*, 2009 WL 3055362, at *2–3. Despite the trend in federal appellate case law, the number of inconsistent district court decisions interpreting similar clauses creates an unnecessary risk of litigation over such clauses. *See id*. This risk can easily be mitigated with clear drafting.

12

### III. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the complaint's sufficiency, not the merits of the case. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (citations omitted); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). A complaint need "only present 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of illegal acts." *Vasquez v. Ind. Univ. Health, Inc.*, 40 F.4th 582, 587 (7th Cir. 2022) (quoting *Twombly*, 550 U.S. at 556); *see also Brooks v. Ross*, 578 F.3d 574, 580–81 (7th Cir. 2009).

On a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). This principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### IV. Enforceability of Non-Competition Clause

To state a breach of contract claim under Illinois law, Experiential must plausibly allege "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (quoting *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 1st Dist. 2001); other citation omitted). Reddish does not suggest that any of these elements is inadequately

13

pleaded in the complaint. Rather, he argues that § 7 of the Agreement is unenforceable because it is overly broad as to the time period, activities prohibited, and geographic area covered. *See* Mot. to Dismiss 3–5.

In Illinois, "Restrictive covenants are to be strictly construed and interpreted by the courts and any ambiguities should be resolved against the restriction." *Nw. Podiatry Ctr., Ltd. v. Ochwat*, 2013 IL App (1st) 120458, ¶ 40 (citing *Hagerty, Lockenvitz, Ginzkey & Assocs. v. Ginzkey*, 406 N.E.2d 1145, 1147 (Ill. App. Ct. 4th Dist. 1980)). Illinois courts apply a three-pronged reasonableness test to determine whether a non-competition clause is enforceable. *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 17 (citing *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999)). Under this test, a non-competition clause is reasonable "only if" it: (1) "is no greater than is required for the protection of a legitimate business interest of the employer-promisee;" (2) "does not impose undue hardship on the employee-promisor;" and (3) "is not injurious to the public." *Id*. (citing *BDO Seidman*, 712 N.E.2d at 1223, and Restatement (Second) of Contracts § 187 cmt. b, § 188(1) & cmts. a, b, c (Am. Law Inst. 1981)).

"Whether a restrictive covenant [not to compete] is reasonable is a question of law." *Nw. Podiatry Ctr.*, 2013 IL App (1st) 120458, ¶ 38 (citing *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 91 (Ill. 2006)). But the Illinois Supreme Court has been clear that the answer to this legal question must be "based on the totality of the circumstances presented in the record." *Reliable Fire Equip.*, 2011 IL 111871, ¶ 39 (citation omitted). The court in *Reliable Fire Equipment* emphasized the need to decide each case on the particular facts presented:

> The understandable temptation is to view exemplary facts presented in particular cases as the outermost boundary of the inquiry. Thus, precedent is set to guide future cases. However, "if it were possible to make a complete list today, human ingenuity would render the list obsolete tomorrow." *Arthur Murray Dance Stud. of Cleveland, Inc. v. Witter*, 105 N.E.2d 685, 695 (Ohio Ct. Com. Pl. 1952).
>
> Parties have long turned to the common law to argue for or against the enforceability of noncompetition agreements. "There is, therefore, an especially well-developed and significant body of judicial decisions applying the general rule of reason . . . to such promises." Restatement (Second) of Contracts § 187 cmt. a (Am. Law Inst. 1981). The common law, based on reason and experience, has recognized several factors and subfactors within the component of the promisee's legitimate business interest.

14

> However, we hold that such factors are only nonconclusive aids in determining the promisee's legitimate business interest, which in turn is but one component in the three-prong rule of reason, grounded in the totality of the circumstances. "Each case must be determined on its own particular facts. Reasonableness is gauged not just by some but by *all* of the circumstances. The same identical contract and restraint may be reasonable and valid under one set of circumstances, and unreasonable and invalid under another set of circumstances." (Emphasis in original.) *Arthur Murray*, 105 N.E.2d at 692–93. Accord Restatement (Second) of Contracts § 186 cmt. a, § 188 cmt. g. We expressly observe that appellate court precedent for the past three decades remains intact, but only as nonconclusive examples of applying the promisee's legitimate business interest, as a component of the three-prong rule of reason, and not as establishing inflexible rules beyond the general and established three-prong rule of reason.

*Reliable Fire Equip.*, 2011 IL 111871, ¶¶ 40–42 (some internal citations omitted).

Due to the fact-specific nature of the analysis and the limited information often available, federal district courts have declined to rule on whether a non-competition clause is reasonable at the Rule 12(b)(6) stage, reasoning that "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016) (citing *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *5 (N.D. Ill. Dec. 18, 2015) and *Nortek Prods. (Taicang) Ltd. v. FNA Grp., Inc.,* 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011); other citation omitted); *see also, e.g.*, *Am. Transp. Grp., LLC v. Power,* 2018 WL 1993204, at *4–5 (N.D. Ill. Apr. 27, 2018); *Bankers Life & Cas. Co. v. Miller*, 2015 WL 515965, at *4–5 (N.D. Ill. Feb. 6, 2015). For the following reasons, the present record is insufficiently developed to perform the reasonableness analysis required by *Reliable Fire Equipment*.

Reddish first argues that the Agreement's non-competition provisions are geographically overbroad. Experiential pleads that, under its construction of the agreement, Reddish "would retain the ability to build and operate his own challenge courses and design and build courses outside of North America." Compl. ¶ 18. It is reasonable to infer that the parties contemplated permitting Reddish to continue to work with existing clients in Africa, Ghana, and Grenada. *See id*. Section 7.5.1 of the agreement supports this inference, for it allows Reddish to compete with Experiential in Africa, Ghana, and Grenada. The court needs considerably more information

about Reddish's clients and future business prospects in Africa, Ghana, and Grenada before it can determine whether § 7's geographic restrictions are reasonable.

Reddish also challenges the non-competition clause's temporal scope. Section 7.2 contains a three-year time limit: "Seller shall no longer participate in the Business of providing 3rd party vended services in design, construction, inspection, staff training, installation, and maintenance or equipment sales for a period of three (3) years from the date of this Agreement." Agreement § 7.2. The Agreement's next section contains no temporal limitation: "Based on the foregoing, and as an express condition of Company's purchase of the Seller Domains and Seller Websites, Seller agrees that it shall permanently not compete with Company in the Business in any jurisdiction." Agreement § 7.3. Experiential reads § 7.2's three-year restriction narrowly. According to the excerpt of Experiential's letter to Reddish dated October 21, 2021, quoted in the complaint, Experiential reads § 7 as permanently prohibiting Reddish from forming a company that competes with Experiential. *See* Compl. ¶ 49. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 874 N.E.2d 43, 48 (Ill. 2007) (citing *Bd. of Trade of Chi. v. Dow Jones & Co.*, 456 N.E.2d 84, 90 (Ill. 1983)). Hence, whether Experiential's construction of the three-year limit in § 7.2 is correct depends on how it is construed in the context of the surrounding provisions and the contract as a whole. The parties have not briefed this question, however, leaving the court at sea in attempting to analyze the scope and reasonableness of the temporal limitation imposed in the Agreement's non-competition clause.

Finally, Reddish contends that § 7 of the Agreement is overbroad because it "covers every activity in which Reddish was engaged" before he sold his business in 2018. Mot. to Dismiss 4 (citing Agreement § 1.1). Reddish does not identify the specific activities in which he engaged, and the complaint sheds no light on this subject.[4] *See* Mot. to Dismiss 4–5; Reply 6–8.

---

4   Even if Reddish had provided further details in his briefing, the court could not consider them on a Rule 12(b)(6) motion because they are not alleged in the complaint. *See Geinosky*, 675 F.3d at 745 (continued on next page)

16

As Experiential points out, *see* Resp. 14, the Agreement allows Reddish to work in a related field—he "may build courses for himself to manage and/or operate and development of [sic] web sites for the promotion of the courses [he] manages and/or operates." Agreement § 7.5. Assuming without deciding that Experiential's construction of the Agreement is correct, the present record provides insufficient information on the activities in which Reddish engaged before he sold his business in 2018, such as whether he operated or managed courses, for the court to determine whether this restriction is reasonable under the totality of the circumstances. *See Reliable Fire Equip.*, 2011 IL 111871, ¶¶ 39–42; *Traffic Tech*, 2015 WL 9259544, at *21–22.

The court makes the foregoing observations solely to demonstrate that deciding whether the restrictions imposed by § 7 of the Agreement "are reasonable . . . requires the Court to make a fact-based determination that is not appropriate at the motion-to-dismiss stage." *Allied Waste Servs.*, 177 F. Supp. 3d at 1110 (quoting *Nortek Prods.*, 2011 WL 2110043, at *4). The court implies nothing about whether, once the facts are developed, § 7 of the Agreement is, or is not, enforceable under the totality of the circumstances.

Before closing, the court calls the parties' attention to the agreement's savings clause:

> 12.18 <u>Savings Clause.</u> In the event that any provision of this Agreement is held to be void or unenforceable by a Court of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the Parties with the same effect as though the void or unenforceable part had been deleted. Further, any provision held to be void or unenforceable by a Court of competent jurisdiction shall be construed, if possible, to give effect to the Parties' intent. Specifically, if any provision, or any part thereof, is held to be unenforceable because of temporal or geographic restriction, Seller agrees that the court making such determination shall have the power to reduce the temporal and/or geographic restrictions stated herein, or both, and to delete specific words or phrases to accomplish the intent of the Parties. The Parties agree that any such provision, in its form so modified by the court, shall then be enforceable and shall be enforced.

Agreement § 12.18.

The parties do not mention § 12.18's savings clause in their briefing. *See* Mot. to Dismiss 1–5; Resp. 1–15; Reply 1–10. Illinois courts look upon reformation of non-competition

---

n.1; *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Plumbers' Pension Fund, Loc. 130 v. Republic Piping Sys., Inc.*, 2020 WL 4437846, at *2 (N.D. Ill. Aug. 3, 2020) (Gottschall, J.); *TCF Mortg. Corp. v. Gelber Holding Co.*, 1991 WL 127587, at *1 (N.D. Ill. July 3, 1991).

clauses with "suspicion," though reformation is possible depending on the circumstances. *See generally Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 529–30 (Ill. App. Ct. 1st Dist. 2007); *Bankers Life & Cas. Co. v. Miller*, 2015 WL 515965, at *3 (N.D. Ill. Feb. 6, 2015). The parties have not briefed whether reformation would be warranted if the court finds any portion of § 7 unenforceable or how § 7 should be reformed. In light of § 12.18, future briefing must address the possibility of reformation.

## V. Conclusion

For the reasons stated, Reddish's motion to dismiss the complaint for improper venue, analyzed under the forum non conveniens doctrine, is denied. Reddish's motion to dismiss for failure to state a claim is denied because the record is insufficiently developed to determine whether the non-competition clause in § 7 of the Asset Purchase Agreement dated October 5, 2018, is reasonable and enforceable under Illinois law.

Dated: September 28, 2023 /s/ Joan B. Gottschall
United States District Judge